**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CAREONE, LLC, et al., | : | |
| Plaintiffs, | : | **Civil No. 10-2309 (FLW)** |
| | : | |
| v. | : | **OPINION** |
| | : | |
| WILLIAM G. BURRIS, JR., et al., | : | |
| | : | |
| Defendants. | : | |

**WOLFSON, United States District Judge:**

Against a backdrop of numerous state-court litigations between the parties, which litigations each arise out of Plaintiffs CareOne, LLC's ("CareOne's"), Burris & Straus Beach Development/Cranmer, LLC's ("Burris & Straus-Cranmer's"), and Burris & Straus Beach Developers, LLC's ("Burris & Straus-Developers'")(collectively "Burris & Straus'," and the three plaintiffs collectively referred to as the "CareOne Companies'") construction of assisted living facilities in New Jersey, Plaintiffs obtained leave from a state court judge to bring this Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1961, et seq., action in this Court. In their complaint here, Plaintiffs allege that a former, high-ranking employee of the CareOne Companies, William G. Burris, Jr., orchestrated and

1

operated a kickback scheme with several construction vendors ("Vendor Defendants")[1] whom he directed to fraudulently inflate their invoices and, thereby, used the CareOne Companies to line his own pockets.  After the complaint was filed, CareOne settled with Burris and all but one of the Vendor Defendants.  The sole remaining Vendor Defendant, Daniel Bossi, has filed a motion to dismiss Plaintiffs' Complaint and a motion to strike Plaintiffs' Amended Complaint.  Defendant Bossi, further, seeks sanctions against Plaintiffs' counsel pursuant to Federal Rule of Civil Procedure 11 for filing a suit without conducting an appropriate pre-filing verification of facts alleged in the complaint.  For the reasons that follow, the Court grants Defendant Bossi's motions to dismiss and to strike, but denies the request for sanctions.

I.      BACKGROUND

        The following facts are taken from Plaintiffs' Complaint, which facts must be taken as true on a motion to dismiss.  The gravamen of Plaintiff's Complaint is that William Burris, along with his wife Linda Burris and other of their relatives, engaged in "a long-continuing pattern of mail fraud and wire fraud" involving "fraudulent and inflated invoices submitted to plaintiffs by vendors who are defendants herein, arising from a

---

[1]      The Defendants named in the complaint are William G. Burris, Jr. ("Burris"), Linda Burris (Linda Burris"), Linda Burris, Inc., Joseph Foy ("Foy"), Nancy DeAngelis ("DeAngelis"), Robert Heiler ("Heiler"), Daniel Bossi ("Bossi"), Richard Pulaski ("Pulaski"), Roland Borglund ("Borglund") and David Yeager ("Yeager").  Of this group, Defendants DeAngelis, Heiler, Pulaski, Borglund, Yeager and Bossi are the Vendor Defendants. Compl., ¶ 3.

kickback scheme between and among those vendor defendants and defendants Burris and his wife." Compl., ¶ 1. Before delving into the details of Plaintiffs' Complaint, the Court first explains the genesis of the parties' dispute and the several state-court litigations of which this suit is a part.

According to the complaint, "[f]or nearly ten years, Burris was the Executive Vice President for Construction and Development of CareOne and a member of Burris & Straus performing the same functions for those entities." Id. at ¶ 2.

> As part of CareOne's and Burris & Straus' senior management team, Burris had significant control and influence over CareOne and Burris & Straus, as he directed their construction and development activities. With respect to his position at CareOne, Burris was responsible for selecting and acquiring land and existing properties, and then designing, developing and converting that real estate into assisted living or healthcare facilities to be run by CareOne, its affiliates or subsidiaries. Similarly, Burris selected and acquired land and existing properties on behalf of the Burris & Straus entities, and then designed, developed and converted that real estate for resale.

Id. As part of his job responsibilities, Burris selected and hired vendors to perform construction work on the properties. Id. at ¶ 3.

Plaintiffs allege that, throughout his ten-year tenure, "Burris regularly used the Vendor Defendants for his own personal gain at the expense of the CareOne Companies by . . . convert[ing], steal[ing] and embezzl[ing] millions of dollars from the CareOne Companies ...." Id. at ¶ 4. Specifically, the complaint alleges, "Burris abused his senior

management position at the CareOne Companies by conducting the affairs of the CareOne Companies to pressure and obtain kickbacks from the Vendor Defendants in exchange for dispensing with competitive bidding resulting in the Vendor Defendants submitting padded and excessive invoices to the CareOne Companies which were, as a result, false and fraudulent." Id. at ¶ 5.  Once the Vendor Defendants "submitted false and fraudulent invoices to the CareOne Companies . . . Burris, with the assistance of another CareOne employee, defendant Joseph Foy, would approve these invoices, arrange for payment of the fraudulent invoices by the CareOne Companies, and affirmatively conceal the no-bid, kickback scheme from the principal of the CareOne Companies." Id.

It is alleged that Bossi, as owner of Extreme Construction, Inc. ("Extreme Construction"), "a New Jersey corporation that was formed specifically for the purpose of performing work on CareOne projects," id. at ¶ 21, provided kickbacks to Burris in response to Burris' demand for such payments. Id. "As a result, Bossi conspired with Burris to conduct and to participate in the conduct of the affairs of the CareOne Companies and Extreme Construction through the pattern of mail and wire fraud arising from Burris' false and fraudulent invoice scheme." Id.

Noticeably, the complaint does not describe in what manner the invoices are fraudulent other than to state that they "were for work performed at an inflated price, made possible by the lack of competitive bidding and the kickbacks to Burris." Id. at ¶ 37.

4

Plaintiffs attach copies of the invoices to the complaint, and state summarily that "[e]ach one of the transactions listed in [an exhibit attached to the complaint] caused or resulted in the use of mails or the interstate wires in violation of 18 U.S.C. §§1341 and 1343." Id. at ¶ 38.   These invoices, the complaint alleges, constitute "The Bossi and Extreme Construction Pattern of Fraudulent Invoices and Payments." Id. at ¶¶ 37-8.

Burris was terminated in March of 2009 for conduct unrelated to the alleged kickback scheme. Id. at ¶ 6. Following Burris' termination, Plaintiff brought several state court actions against Burris and others. See Fram Decl., ¶¶ 2-9 (detailing litigations). One suit was filed in 2009 in the New Jersey Chancery Division, Bergen County. Through discovery obtained in that action, Plaintiffs encountered testimony that Burris allegedly orchestrated and operated the aforesaid RICO scheme to defraud the CareOne Companies. Plaintiffs then sought permission from the judge, who presided over the Bergen County action, to bring the instant suit in federal court. While noting that New Jersey's Entire Controversy Doctrine would ordinally require such claims to be brought in the pending state court action, the Judge granted Plaintiffs' request because requiring that the RICO claims be brought in that suit would have unduly delayed trial. See generally Tr. of Motion dated Apr. 30, 2010 at 8 -9, Exh. J to Def. Open. Br. This suit followed.

Plaintiffs filed their initial complaint in May of 2010 asserting federal RICO claims under 18 U.S.C. § 1962(c), conspiracy to commit federal RICO claims under § 1962(d),

common law fraud, and civil conspiracy under New Jersey Law.  With respect to the RICO
and conspiracy to commit RICO claims, the complaint contains 19 counts that each focus
on distinct RICO enterprises.  For example, Count I is titled "RICO § 1962(c) - The CareOne
Enterprise" and is directed at Burris' and Foy's alleged conduct together with all Vendor
Defendants in orchestrating an all-encompassing scheme to defraud.  See Compl., ¶¶ 47-53.
Count II is titled "RICO § 1962(d) - The CareOne Enterprise" and alleges that Bossi and the
other Vendor Defendants "conspired among themselves and with Burris and Foy to
conduct and participate in the conduct of the affairs of CareOne through a 'pattern of
racketeering' violation of 18 U.S.C. §1962(c)."  Id. at ¶ 56.  Thereafter, the complaint
delineates numerous enterprises, including "The Burris & Straus Enterprises," Counts III
and IV, "The Pulaski Construction Enterprise," Counts XXII and XXIII, and, notably, "The
Extreme Construction Enterprise," Counts X and XI, with a matching RICO, and conspiracy
to commit RICO, count for each enterprise.[2]

As suggested by the counts' titles, The Extreme Construction Enterprise allegations
focus on Defendant Bossi's alleged conduct as owner of Extreme Construction.  Id. at ¶¶
93-102.  No detail is provided in these counts as to the nature of Bossi's alleged fraudulent

---

[2]     There are two types of enterprises asserted in the complaint.  The first type
is those linked to a particular Plaintiff-entity, e.g., Count IV ("The Burris & Straus
Enterprises"), and Count VII ("The Linda Burris, Inc., Immobiliare and Prestatori
Immobiliare Enterprises").  The second type is linked to a particular Vendor Defendant,
e.g., The Pulaski Construction Enterprise described in Counts XXII and XXIII.

conduct, other than the assertion that Bossi transmitted "false invoices, checks, and wires, in furtherance and as a result of the schemes and artifices to defraud, in violation of 18 U.S.C. §1341 and 18 U.S.C. §1343." Id. at ¶ 96.  Plaintiffs, further, attach to the Complaint a spreadsheet identifying payments made by the CareOne Companies to Extreme Construction.  Compl., Exh. B.  The spreadsheet lists the project for which Extreme Construction performed work, *e.g.*, CareOne at Evesham Assisted Living, the amount invoiced, the invoice date, the check amount paid, and the check number.

Piggy-backing on the RICO allegations, the common law fraud claim alleges simply that "Defendants Burris, Linda Burris, Foy, DeAngelis, Heiler, Bossi, Pulaski, Borglund, Yeager, and Linda Burris Inc., directly and indirectly, engaged in such fraud, as described in detail in the Complaint and Exhibits." Id. at ¶ 147.  Similarly, the civil conspiracy claim alleges that "Defendants Burris, Linda Burris, Foy, DeAngelis, Heiler, Bossi, Pulaski, Borglund, Yeager, and Linda Burris Inc., directly and indirectly, conspired to, aided, abetted and facilitated the fraud and conversion, as described in detail in the Complaint and Exhibits." Id. at ¶ 150.

Defendants Borglund, Linda Burris, William G. Burris, Jr, Nancy Deangelis, Linda Burris Inc., Richard Pulaski, and David Yeager jointly moved to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) in June of 2010, arguing that the complaint's RICO allegations failed to satisfy Rule 9(b)'s heightened pleading

requirement and, since Plaintiffs' fraud and civil conspiracy claims rely upon the RICO allegations, the complaint should be dismissed in its entirety.[3]   Defendant Bossi subsequently joined in the other defendants' motion.

While the motion was pending, and prior to submitting opposition to the defendants' motion, Plaintiffs filed an Amended Complaint without leave of Court. Attached to the Amended Complaint was a letter from Plaintiffs' counsel stating that "[a]s a result [of the filing of Plaintiffs' Amended Complaint], the previously filed motions to dismiss the initial Complaint are moot ...."  Sellinger Letter dated July 30, 2010 (Docket Entry No. 27).  In response, Defendants filed a motion to strike the Amended Complaint as violative of Rule 15(a), arguing that Rule 15(a) permits amendment as of right only if made within 21 days of service of a responsive pleading.[4]

Thereafter, the suit was stayed for a series of months while the parties negotiated settlement.   Once settlement was reached with certain parties, disputes arose as to enforcement of the settlement's terms.   Finally, all parties with the exception of Bossi settled their claims in this suit.  Accordingly, the only remaining counts in the suit are those that are asserted against Defendant Bossi—the substantive RICO claims and RICO

_____

[3]   Initially, the suit was brought in the Camden vicinage.   The case was reassigned to this Court in Trenton during the pendency of the motion to dismiss.

[4]   As with the motion to dismiss, Defendants Borglund, Linda Burris, William G. Burris, Jr, Nancy Deangelis, Linda Burris Inc., Richard Pulaski, and David Yeager first moved to strike and Defendant Bossi subsequently joined their motion.

conspiracy claims found in Counts II, IV, VII, X, XI, as well as the common law fraud claim (Count XX) and the civil conspiracy claim (Count XXI).

With the dust settled, and as the only remaining defendant, Bossi then reopened the previously-filed motions to dismiss the initial complaint and to strike the amended complaint. Bossi then filed his own reply brief, attaching to that brief copies of construction contracts and state-court litigation documents involving Bossi and Plaintiffs. These submissions were provided to the Court in support of Bossi's contention that Plaintiffs' suit here is without merit and that sanctions should be imposed against Plaintiffs' counsel. With the motion to dismiss and motion to strike fully briefed, the motions are ripe for decision.

## II.    STANDARD OF REVIEW

### A.    Motion to Strike Amended Complaint

Under Federal Rule of Civil Procedure 15(a), as amended effective December 1, 2009, "a party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed.R.Civ.P. 15(a)(1). Otherwise, the party must seek leave of court to amend. Id. at 15(a)(2).

### B.    Motion to Dismiss

The Federal Rules of Civil Procedure provide that a complaint "shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed.R.Civ.P. 8(a). The purpose of a complaint is "to inform the opposing party and the court of the nature of the claims and defenses being asserted by the pleader and, in the case of an affirmative pleading, the relief being demanded." 5 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1182 (3d ed. 2004).

In reviewing a motion to dismiss for failure to state a claim under 12(b)(6), a court must take all allegations in the complaint as true, viewed in the light most favorable to the plaintiff "and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court "retired" the language in Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 550 U.S. at 561 (quoting Conley, 355 U.S. at 45–46). Rather, the factual allegations in a complaint "must be enough to raise a right to relief above the speculative

level." Id. at 555.  The Third Circuit summarized the pleading requirement post-Twombly:

> The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element.'

Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

In affirming that the Twombly standard applies to all motions to dismiss, the Supreme Court recently further clarified the 12(b)(6) standard.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, ––– U.S. ––––, ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 129 S.Ct. at 1950.  Accordingly, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.  In short, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

The Third Circuit recently reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." West Penn Allegheny Health System, Inc. v.

UPMC, 627 F.3d 85, 98 (3d Cir. 2010). This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy." Id. That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions." Id. (quoting Iqbal, 129 S.Ct. at 1953).

Moreover, in evaluating a motion to dismiss, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. Pension Benefit Guar. Corp. v. White Consol. Indus., 98 F.2d 1192, 1196 (3d Cir. 1993). Importantly "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." Id. (emphasis added).

Here, Defendant Rossi has attached to his reply papers copies of state-court litigation documents relating to a dispute over the monies paid to Extreme Construction for work on various construction projects, as well as copies of construction contracts for some of the projects that are the subject of the parties' dispute in this case. While public records may be considered on a motion to dismiss, a Court may not consider the state-court litigation documents for the truth of the matters asserted therein. See Lum v. Bank of America, 361 F.3d 217, 222 (3d Cir. 2004) abrogated on other grounds by Twombly, 550 U.S.

12

at 561-63; <u>Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.</u>, 181

F.3d 410, 426 n.7 (3d Cir. 1999) ("[A] court that examines a transcript of a prior proceeding

to find facts converts a motion to dismiss into a motion for summary judgment.")  As for

the construction contracts, Plaintiffs' complaint does not refer in any way to the contracts

and it is not clear from the complaint that Plaintiffs' claims are based on those contracts.

Moreover, these exhibits were attached to Defendant Bossi's reply papers and Plaintiffs did

not have the opportunity to respond to the exhibits.[5]  Accordingly, the Court will not rely

upon the contracts, or the state-court litigation documents, in ruling on the instant motion

to dismiss.

### C.      Rule 11 Sanctions

Federal Rules of Civil Procedure Rule 11 places an obligation on counsel to sign any

pleading submitted to the Court.  Fed.R.Civ.P 11(a).  In signing the pleading, counsel

"certifies that to the best of [his or her] knowledge, information, and belief, formed after

an inquiry reasonable under the circumstances [that, *inter alia,*] the factual contentions have

---

[5]      For this reason, the Court declines Defendant's suggestion to convert the motion to one for summary judgment under Federal Rule of Civil Procedure 12(d).  In order to so convert a motion, "all parties must be given the opportunity to present material to the court."  <u>Rose v. Bartle</u>, 871 F.2d 331, 340 (3d Cir. 1989) <u>quoted in</u> <u>Youssef v. Department of Health and Senior Services</u>, No. 10-3628, 2011 WL 1444226, *3 (3d Cir. 2011).  Here, Plaintiffs did not have an opportunity to address the contracts submitted by Defendant Rossi or submit any materials that might affect the Court's interpretation and reliance upon of the contracts.  Thus, conversion under Rule 12(d) would not be appropriate.

evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Id. at 11(b)(3). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney" who violated that subsection of the rule.  Id. at 11(c)(1).  However, for a party to request sanctions against opposing counsel, such a request must be made "separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Id. at 11(c)(2).

## III.   DISCUSSION

As a threshold issue, the Court notes that while Defendant Bossi expresses his frustration with the piecemeal manner in which the parties' claims have been litigated, Bossi does not argue that New Jersey's entire controversy doctrine bars this suit.  Review of the case law reveals that Bossi is correct not to challenge Plaintiffs' suit on this ground because "the Entire Controversy Doctrine does not preclude the initiation of a second litigation before the first action has been concluded."   Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 889 (3d Cir. 1997) cited in Youssef v. Department of Health and Senior Services, No. 10-3628, 2011 WL 1444226, *2 (3d Cir. 2011).  Moreover, neither party has informed the Court that the state court action in Bergen County has reached final adjudication.

14

As a second threshold issue to deciding the motion to dismiss, and in ruling on Defendant Bossi's motion to strike, the Court must determine whether Plaintiffs' filing of the Amended Complaint was proper under Rule 15(a).  It is clear that Plaintiffs' filing did not comport with the Rule's dictates because it was not filed within 21 days of the filing of the first motion to dismiss on June 29, 2010; Plaintiffs' Amended Complaint was not filed until a month later, on July 29, 2010.  Fed.R.Civ.P. 15(a)(1) ("a party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."). Indeed, twenty-one days from the date of Defendants' Rule 12(b)(6) motion was July 20, 2010, and the Amended Complaint was not filed until nine days thereafter.  Accordingly, the Court will focus its inquiry, in adjudicating the motion to dismiss, on the initial complaint's allegations and Bossi's motion to strike the Amended Complaint is granted.[6]

Finally, and before turning the merits of the motion to dismiss, the Court denies

---

[6]     Even if the Amended Complaint was properly filed, the complaint's RICO allegations at issue in this motion remain unchanged in the Amended Complaint. Plaintiffs' stated purpose in amending the complaint was solely to "add as plaintiffs the individual CareOne LLC subsidiaries that issued payment for each of the fraudulent invoices submitted by the various Vendor Defendants."  Pl. Opp. at 9.  Thus, this Court's ruling on this motion directed to the complaint would be equally applicable to assessing the sufficiently of the Amended Complaint.

Bossi's request for sanctions against Plaintiffs' counsel. In order for a party to request sanctions against opposing counsel, such a request must be made "separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Id. at 11(c)(2). Here, Defendant Bossi raised his request for sanctions in his reply brief to the motion to dismiss. This method of seeking sanctions is simply not permitted under the plain text of Rule 11. Accord Curtis & Assoc., P.C. v. Law Offices of David M. Bushman, Esq., 758 F.Supp.2d 153, 182 (E.D.N.Y. 2010) (denying sanctions request for failure to bring in a separate moton although RICO suit allegations were not pled with particularity, there was a "long history of litigation between some of the parties in this case, and the currently ongoing state court litigation involving many of these same parties," and certain of counsel's argument went against the weight of legal authority).[7]

Turning now to the merits, 18 U.S.C. § 1962(c) "makes it unlawful 'for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 362 (3d Cir.2010) (citing 18 U.S.C. § 1962(c)). For Plaintiffs to plead a civil RICO claim under 18 U.S.C. § 1962(c), they must allege (1) conduct

---

[7]     Because Defendant's request for sanctions was not properly filed, the Court does not comment on Defendant's reliance upon the opinion in South Broward Hosp. Dist. v. MedQuist Inc., 516 F.Supp.2d 370 (D.N.J. 2007), by another judge sitting in this district, that issued a written warning to one of Plaintiffs' counsel here for his conduct in that case.

(2) of an enterprise (3) through a pattern (4) of racketeering activity. Sedima v. Imrex Co., 473 U.S. 479, 482–83, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). The term "enterprise" includes " 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.' " Ins. Brokerage, 618 F.3d at 362–63 (citing 18 U.S.C. § 1961(4)). With respect to the pattern of racketeering activity, the statute "requires at least two acts of racketeering activity within a ten-year period" which "may include, inter alia, federal mail fraud under 18 U.S.C. § 1341 or federal wire fraud under 18 U.S.C. § 1343." Id. (citing 18 U.S.C. § 1961(1)(5) and Lum, 361 F.3d at 223).

When the predicate acts alleged are mail fraud, a plaintiff must not only plead the elements of mail fraud but must also satisfy the heightened Rule 9(b) pleading standard. See Warden v. McLelland, 288 F.3d 105, 114 (3d Cir. 2002).  To state a claim for mail fraud under 18 U.S.C. § 1341, a plaintiff must allege: "(1) the existence of a scheme to defraud; (2) the use of the mails, whether the United States Postal Service or a private carrier, in furtherance of the fraudulent scheme; and (3) culpable participation by the defendant ( i.e., participation by the defendant with specific intent to defraud).  United States v. Dobson, 419 F.3d 231, 236-37 (3d Cir. 2005)).

Rule 9(b) further requires that "a party must state with particularity the circumstances constituting fraud or mistake."  Fed.R.Civ.P. 9(b).  The plaintiff may

17

accomplish this by "identify[ing] the purpose of the mailing within the defendant's fraudulent scheme and specify[ing] the fraudulent statement, the time, place, and speaker and content of the alleged misrepresentation." Annulli v. Panikkar, 200 F.3d 189, 200 n.10 (3d Cir. 1999) overruled on other grounds by Rotella v. Wood, 528 U.S. 549, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000)).[8] In other words, Plaintiffs' pleading must contain the "who, what, when and where details of the alleged fraud." District 1199P Health and Welfare Plan v. Janssen, L.P., --- F.Supp.2d ----, 2011 WL 1086004 at *13 (D.N.J. 2011) (quoting Allen Neurosurgical Assoc., Inc. v. Lehigh Valley Health Network, No. 99–4653, 2001 U.S. Dist. LEXIS 284, at *8, 2001 WL 41143 (E.D.Pa. Jan. 18, 2001)).  Indeed, "[t]he purpose of Rule 9(b) is to provide notice of the 'precise misconduct' with which defendants are charged" in order to give them an opportunity to respond meaningfully to the complaint, "and to prevent false or unsubstantiated charges." Rolo v. City of Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998) abrogated on other grounds by Rotella v. Wood, 528 U.S. 549, 120 S.Ct. 1075, 1078-80, 145 L.Ed.2d 1047 (2000).

---

[8]      "The Third Circuit permits federal common law or 'garden variety' fraud, including mail and wire fraud." District 1199P Health and Welfare Plan v. Janssen, 2008 U.S. Dist. LEXIS 103526, at *39, 2008 WL 5413105 (D.N.J. Dec. 23, 2008) (citing Tabas v. Tabas, 47 F.3d 1280, 1290 (3d Cir.), cert denied, 515 U.S. 1118, 115 S.Ct. 2269, 132 L.Ed.2d 275 (1995)). The two elements of a mail and wire fraud charge are 1) a scheme to defraud; and 2) mailing or wiring in furtherance of the scheme to defraud. Id. (citing Greenberg v. Brewster, 816 F.Supp. 1039, 1049 (E.D.Pa.1993)).

Here, each of Plaintiffs' claims rise and fall on whether the RICO allegations satisfy Rule 9(b)'s heightened pleading standard since, as noted, Plaintiffs' state law fraud and civil conspiracy claims rely on the RICO mail fraud allegations.  For this reason, each of Plaintiffs' claims is also subject to the strictures of Rule 9(b).  Cf. Lum, 361 F.3d at 228 (holding that, while antitrust claims are typically not subject to Rule 9(b), "[b]ecause plaintiffs allege that the defendants accomplished the goal of their [antitrust] conspiracy through fraud, the [c]omplaint is subject to Rule 9(b)."); Gray v. Bayer Corp., 2009 U.S. Dist. LEXIS 48181, at *5-*6 (D.N.J. June 8, 2009) ("[A] plaintiff cannot escape Rule 9(b) by alleging claims that do not traditionally involve fraud; rather, the test is whether the particular claim alleged in this matter sounds in fraud. If so, the pleading is subject to 9(b).").

The fraudulent scheme alleged in the complaint is arguably two-fold, that—(1) Burris and the other CareOne employee-defendants fraudulently concealed that Burris hand-picked the vendors to whom he awarded vendor contracts for the building of CareOne facilities rather than competitively bidding those contracts; and (2) Burris directed Bossi and the other Vendor Defendants to fraudulently inflate their invoices so that Burris could skim off the top of the CareOne Companies' payments to the Vendor Defendants, retaining the difference in payment for himself as a kickback.  However, Plaintiffs make clear in their opposition papers that

> [t]he only racketeering activity alleged in the Complaint —
> and, as a result, the only activity that needed to be alleged with

> particularity — was the false and fraudulent invoices
> defendant submitted to plaintiffs, and that plaintiffs paid,
> which form the basis of the mail fraud and wire fraud pattern
> of racketeering activity.

Pl. Opp. at 4. In Plaintiffs' words, "[i]t was these submissions of false invoices resulting in payments by plaintiffs — and nothing else — that violated the mail and wire fraud statutes." Id. Accordingly, the Court's reads Plaintiffs' mail fraud allegations as stating simply that the inflated invoices allegedly submitted by Bossi were fraudulent.

As to these allegations, Defendant argues that they fail to satisfy Rule 9(b)'s particularity requirement. In Defendant's view, while Plaintiffs attach to their complaint a summary of the alleged invoices (which summary identifies the payments made by the CareOne Companies to Extreme Construction, the amount invoiced, the invoice date, the check amount paid, and the check number), Plaintiffs have failed to specify what aspect of the Extreme Construction invoices is fraudulent.[9] Indeed, the complaint does little more than state that the invoices were "false" and "padded and excessive invoices." See Compl., ¶ 5 ("padded and excessive invoices"); id. at 14 ("false and fraudulent invoices"); id. at ¶

---

[9]     Relatedly, Defendant Bossi argues that Plaintiffs' allegations fail to satisfy Rule 9 because the allegations do not reference the various construction contracts Plaintiffs entered into with Extreme Construction. However, as indicated above, the Court may not consider the contracts attached to Defendant's reply brief on the instant motion to dismiss. Accordingly, the Court does not consider this argument herein.

21 ("false and fraudulent invoice scheme").[10]

Plaintiffs counter that the listing of the allegedly fraudulent transactions is sufficient to meet the particularity requirement, arguing that "each invoice listed [in the summary] was padded and excessive and thus misrepresented the value of the actual work performed." Pl. Opp. at 6. Further, in Plaintiffs' view, they have complied with Rule 9(b) by alleging "who, what, when, where and how" of the transactions at issue. Id. at 13.

The problem with Plaintiffs' argument is that they underestimate what the "who, what, when, where and how" embodiment of the Rule 9(b) standard requires. As explained by the Third Circuit in Frederico v. Home Depot, 507 F.3d 188 (3d Cir. 2007), "a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged." Id. at 200 (quoting Lum, 361 F.3d at 223-24). In Frederico, the Third Circuit held that the allegations pled in that case failed to satisfy the stringent pleading requirements of Rule 9(b).[11] The plaintiff in that case challenged the defendant-truck renting company's

---

[10]     Id. at ¶ 96 ("As set forth above and in Exhibit B, Bossi used, and caused numerous uses of, the United States mails and interstate wires, including, but not limited to, the transmission therein of false invoices, checks, and wires, in furtherance and as a result of the schemes and artifices to defraud, in violation of 18 U.S.C. §1341 and 18 U.S.C. §1343. Each of these violations constitutes "racketeering activity" within the meaning of 18 U.S.C. §1961(1).").

[11]     Although Frederico's analyzes a common law fraud claim, as opposed to mail fraud, its application of the Rule 9(b) heightened pleading standards is equally applicable here.

21

late fees as being fraudulently imposed, alleging in her complaint that the late fees were "excessive," that the defendant failed to disclose the lack of after-hours locations at which the truck could be returned, and that the defendant misrepresented that the truck rental and late fees would not " would not accumulate beyond the time at which Plaintiff and class members returned or attempted to return rented vehicles ...." Id.

Rejecting the plaintiff's argument on appeal that these allegations "disclose[d] the substance" of the alleged misrepresentation, *i.e.*, that the defendant misrepresented the actual hours during which trucks could be returned, the Third Circuit concluded that the complaint's allegations did not put the defendant "on notice of the precise misconduct" with which it was charged. Id. (quoting Lum, 361 F.3d at 223-24). Specifically, the plaintiff read the parties' agreement as stating that the store closed at 10 pm and, therefore, the truck could be returned at any time prior to 10 pm. Contrary to the plaintiff's understanding, the rental department closed earlier than the remainder of the store and the parties' agreement did not disclose that fact. "[T]hus[,] any attempt to return the vehicle before closing but after the rental department closed resulted in the unexpected overnight accumulation of late fees." Id. at 201 n.10.

In short, the plaintiff argued on appeal that the "fees were excessive because of the undisclosed gap between the time the rental department closes (a time not disclosed in the Agreement) and the time the store closes (a time disclosed in the Agreement)." Id. at 201

n. 9. The plaintiff's complaint, however, did not include allegations to that effect. "Without such detail appearing in the complaint, [the court reasoned, the defendant] was not placed on notice of the precise misconduct with which it is charged." Id. (alterations and citation omitted).[12]

Similarly, here, Plaintiffs fail to allege in what manner the Extreme Construction invoices were excessive. Plaintiffs' description of the invoices merely lists the invoice and the amount. While the complaint describes the invoices as "padded," "excessive," and "false," nowhere in the complaint (or summary of invoices) do the Plaintiffs allege the substance of the alleged misrepresentation. It is unclear whether the Plaintiffs are alleging that the *number* of invoices submitted are excessive or whether the *amounts sought* in each individual invoice is excessive, or a combination of both. Without this sort of detail, Plaintiffs fail to place Defendant Rossi on notice of the "precise misconduct" against which he must defend. Id.

Moreover, to the extent that Plaintiffs argue that requiring allegations that detail the numerical amount of the overcharges would require them to prematurely present their damage calculation, and further which Plaintiffs assert they could not accomplish without the benefit of discovery, their argument is misdirected. It is not the numerical amount of

---

[12]     Another deficiency in that plaintiff's complaint was a failure to assert which person made the alleged false misrepresentation. Id. at 201-02. That type of deficiency is not at issue in this case.

alleged overcharges that need be specified, but the "general content of the misrepresentation," that is missing from their allegations.  Lum, 361 F.3d at 224.

The decision in Ford Motor Co. v. Edgewood Properties, Inc., No. 06-1278, 2009 WL 150951 (D.N.J. Jan. 20, 2009), further illustrates what is lacking from Plaintiffs' allegations here.  In that case, the plaintiff alleged that the defendants "formed an enterprise through the wires and mails, with the intent to distribute *contaminated concrete that they knew was contaminated* so as to avoid incurring costs of legally disposing of the concrete."  Id. at *16 (emphasis added).   In other words, the complaint alleged that the defendants were invoicing a damaged product at full price.  Furthermore, the plaintiff alleged, that the mails were used "to avoid the significant expenses of properly and lawfully handling, testing and/or disposing of the contaminated concrete."  Id.  This sort of language, the court in Edgewood held, sufficiently placed the defendants on notice of the fraudulent conduct they were alleged to have committed.   While each individual mailing did not include misrepresentations, when read as a whole, the plaintiff's allegations still informed the defendants of the nature of the misrepresentations alleged.  Id.  Here, in contrast to the allegations pled in Edgewood, Plaintiffs have not alleged anything about Defendant Bossi's submission of invoices other than the conclusory statements that the invoices were "false" and "padded."

Plaintiffs correctly argue that even "innocent mailings" that further a scheme to

defraud may satisfy the mailing requirement of a mail fraud claim.  See U.S. v. Al-Ame,

434 F.3d 614, 617 (3d Cir. 2006) ("the Supreme Court has definitively rejected the assertion

that routine or innocent mailings are per se excluded from the scope of 18 U.S.C. § 1341.").

But the complaint here alleges that the invoices *are the fraud*—not that they are mere

instrumentalities by which the fraud was accomplished.  Indeed, as Plaintiffs acknowledge

in their papers, while "[a] scheme or artifice to defraud need not be fraudulent on its face,

[it] must involve some sort of fraudulent misrepresentations or omissions reasonably

calculated to deceive persons or ordinary prudence and comprehension." Pl. Opp. at 12-13

(quoting Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1415 (3d Cir. 1991)).  This is

because "the statutory term "defraud" [found in the mail fraud statute] usually signifies

'the deprivation of something of value by trick, deceit, chicane or overreaching." Id.

(citations omitted).  What is lacking in Plaintiffs' allegations here is that they do not

describe the "trick."

Furthermore, Plaintiffs' citation to HT of Highlands Ranch, Inc. v. Hollywood

Tanning Systems, Inc., 590 F.Supp.2d 677 (D.N.J. 2008), is unhelpful to them.  The plaintiffs

in HT alleged in their complaint and RICO Case Statement that the defendants:

> induced Plaintiffs into entering into deceptively vague leasing
> agreements with [one defendant] that contained little to no
> description of the equipment they were leasing, and that [the
> defendant] thereafter exploited such vagueness by mailing and
> faxing to the leasee-Plaintiffs misleading invoices that *charged*
> *these Plaintiffs for equipment they did not receive, and for new*

> *equipment when they received used equipment.*

Id. at 686-87 (emphasis added).  The district court found that these allegations satisfied Rule 9(b)'s particularity requirement.

Ironically, Plaintiffs' reference to HT highlights the deficiencies in their own pleading.  The allegations in HT specified the precise reason why the invoices were misleading: they were alleged to have "charged [the] Plaintiffs for equipment they did not receive, and for new equipment when they received used equipment."  Id.  Charging someone for requirement that is not provided is clearly a form of trickery and deceit.  So too is charging someone for new equipment when, in fact, used equipment was provided. These sort of allegations fairly place a defendant on notice of the fraudulent conduct against which he must defend.  The most descriptive allegations in Plaintiffs' Complaint are that the invoices "greatly exceeded the actual value of the work performed," Compl., ¶ 5, and that the they "were for work performed at an inflated price ...." Compl., ¶ 37.  But these statement do not allege how the "value" is calculated or what constitutes an "inflated" price.  The phrases "exceeded the actual value" and "inflated price," without setting forth the baseline by which a value is deemed excessive or a price deemed inflated, does not assert fraudulent conduct.  Thus, in stark contrast to the allegations in HT, Plaintiffs' allegations do not explain the nature of the trickery Defendant Bossi is alleged

to have completed by mailing the invoices.[13]

For these reasons, the Court concludes that Plaintiffs fail to sufficiently plead predicate acts of mail fraud with particularity.  Because Plaintiffs do not properly plead the predicate acts, the Court need not address Defendant's remaining challenges to Plaintiffs' RICO claims.  Accordingly, Defendant Rossi's motion to dismiss Plaintiffs' RICO claims is granted without prejudice.[14]

As for Plaintiffs' common law fraud and civil conspiracy claims, those claims likewise fail to satisfy Rule 9(b) and must be dismissed.  See Frederico, 507 F.3d at 202-03 (dismissing common law fraud claim for failure to satisfy Rule 9(b)); Spitz v. Medco Health Sol., Inc., No. 10-cv-01159, 2010 WL 4615233, *4 (D.N.J. Nov. 3, 2010) (dismissing civil

---

[13]     Plaintiffs' citation to Darrick Enterprises v. Mitsubishi Motors Corp., No. 05-4359, 2007 WL 2893366 (D.N.J. Sept. 28, 2007), is equally unavailing.  It was alleged, in that case, that the defendants "dumped" unordered cars on the plaintiffs and mailed invoices for the unordered cars to the plaintiffs.  The invoices were (obviously) fraudulent because they were for cars that had not been purchased.  Id. at *8.

[14]     The Court is aware that Rule 9(b) does not apply to the RICO conspiracy claims asserted under 18 U.S.C. § 1962(d).  See Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989).  "But a § 1962(d) claim must be dismissed if the complaint does not adequately allege an endeavor which, if completed, would satisfy all of the elements of a substantive RICO offense."  In re Ins. Brokg. Antitrust Litig., 618 F.3d at 373 (alterations and citations omitted).  Because the Court concludes that Plaintiffs' substantive RICO claims fail, so too do their conspiracy claims.  In addition, the Court notes that Defendant Bossi is mistaken when he argues that the complaint alleges that he violated section 1962(c) as a member of the CareOne and related enterprises.  See Def. Reply at 13.  For those enterprises, only RICO conspiracy claims under section 1962(d) are brought against Bossi.  See Compl., Counts I - VII.  The Court's analysis of the Extreme Construction enterprise claims under section 1962(c) applies equally to the CareOne and related enterprise claims.

conspiracy claim for failure to satisfy Rule 9(b)); see also Brown ex rel. Estate of Brown v. Philip Morris Inc., 228 F.Supp.2d 506, 517 n. 10 (D.N.J.2002) ("Civil conspiracy is not an independent cause of action, and conspiracy liability depends on the presence of an underlying finding of . . . liability . . . The dismissal of plaintiff's other causes of action demands the dismissal of her conspiracy claim.").[15]

The Third Circuit directs that plaintiffs be given an opportunity to amend unless amendment would be futile. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) ("[E]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."). Defendant Bossi argues that granting leave to amend would be futile here because the construction contracts governing the relationship between Extreme Construction and Plaintiffs are lump sum contracts. In other words, that the agreements are for a lump sum makes it implausible, if not impossible, that Defendant Bossi could have actually padded the invoices. To the extent that the agreements attached to Defendant's reply brief are authentic documents, the Court agrees that those contracts may preclude Plaintiffs' RICO claims. As noted, however, the Court cannot rely on those contracts at this juncture and, consequently, may not rely upon the contracts to conclude

_____

[15]     Because the Court dismisses, without prejudice, Plaintiffs' claims for failure to satisfy Rule 9(b), the Court does not reach Defendant Bossi's alternative arguments for dismissal of Plaintiffs' various claims.

that amendment would be futile.  Nonetheless, Plaintiffs are cautioned to consider this argument in determining how, or whether, to replead.  Accordingly, Defendant Rossi's motion to dismiss is granted and Plaintiffs are granted leave to amend their RICO claims, common law fraud, and civil conspiracy claims in a manner consistent with the dictates of this Opinion.

## IV.   CONCLUSION

For the foregoing reasons, the Court grants both Defendant Rossi's motion to strike and to dismiss.  The motion to dismiss is granted without prejudice and Plaintiffs are granted leave to amend their complaint within twenty (20) days of the date of this Opinion.  Defendant's request for sanctions is denied.

Dated:   June 28, 2011

/s/ Freda Wolfson
Honorable Freda L. Wolfson
United States District Judge